UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARS (CITIZENS AGAINST RETAIL SPRAWL),
  by George Ciancio, its President,
GEORGE J. CIANCIO,
GEORGE C. FRANKE,
LAWRENCE F. HELMINIAK,
DAVID & MARY ALYS KRATZKE,
SHARON CRAMER & LESLIE MORRIS,
BRIAN & HELEN BORZYNSKI,
LUCILLE & DENIS MARSH,
CAROLYN L. BAKER,
MARY CICH,                                                          04-CV-0328E(Sr)
ROBERT J. SMACZNIAK,
JEROME J. KUCHARSKI,
JERRY & IDA SAWYER,
NANCY PIENIAZEK,
TERRENCE & KATHLEEN RICHARD,
JAMES P. HEISLER,
RONALD J. SZYPAJLO,
STEPHEN & LUCILLE STAWICKI,
RUTH & NORMAN JOHNSON,
CARLEEN BLAKE RYAN,
GARY & MARIETA RONALD,
JOY THRUN,
WALTER & VIRGINIA WOJDYLA,
FRANK & ANTOINETTE VOLPE,
FRANK & MARLENE TODARO and
ENRICO & DOMENICA BENEDETTI,
                Plaintiffs,

   -vs-

THE UNITED STATES ARMY CORPS OF ENGINEERS,
UNITED STATES OF AMERICA,
BELLA VISTA GROUP, INC.,
NEC TRANSIT WILLIAM, LLC,
OPCO, INC. and
JOHN A. MARTZOLF & CAROLYN M. MARTZOLF, h/w,
                Defendants.

---

**MEMORANDUM and ORDER**[1]

---

[1] This decision may be cited in whole or in any part.


Plaintiffs — Citizens Against Retail Sprawl ("CARS") and named individuals — commenced this action on April 29, 2004 seeking, *inter alia*, an injunctive enjoinder of a retail development in the Town of Lancaster, N.Y. ("the Site"). Plaintiffs are residents of real property situated in the immediate vicinity of the Site and have filed suit against the United States Army Corps of Engineers and the United States of America (collectively "the Federal Defendants") and NEC Transit William, LLC ("NEC"), Bella Vista Group, Inc. ("Bella Vista"), Opco, Inc. and John and Carolyn Martzolf (collectively "the Non-Federal Defendants"). Plaintiffs allege six causes of action, the first two of which are asserted against the Non-Federal Defendants under the Clean Water Act ("CWA"), 33 U.S.C. §1251 *et seq.*, and the remaining four of which are asserted against the Federal Defendants under the Administrative Procedure Act, 5 U.S.C. §706(2)(A). Before the Court is the Non-Federal Defendants' Motions to Dismiss and plaintiffs' Cross-Motion for Judgment on the Pleadings as to Certain Affirmative Defenses.

Plaintiffs seek injunctive relief and penalties from the Non-Federal Defendants pursuant to the citizen suit provisions set forth in Section 505 of the CWA, 33 U.S.C. §1365. Plaintiffs allege that the Non-Federal Defendants engaged in certain construction-related activities at the Site in violation of the CWA. On December 17, 2004 NEC, Bella Vista and Opco (collectively "the Developer Defendants") moved to dismiss plaintiffs' first two causes of action, in which the Martzolfs joined in its entirety on January 25, 2005. The pending motions to

dismiss will be addressed jointly.  The Non-Federal Defendants, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCvP"), claim that plaintiffs' first two causes of action should be dismissed for lack of subject matter jurisdiction and standing and for failure to state a claim upon which relief can be granted.  On January 31, 2005 plaintiffs, in their response to the Non-Federal Defendants' motions to dismiss, cross-moved to dismiss several of the Non-Federal Defendants' affirmative defenses.  For the reasons set forth below, the Non-Federal Defendants' motions to dismiss will be granted, plaintiffs' first two causes of action will be dismissed and, because this action as against the Non-Federal Defendants will be closed, plaintiffs' cross-motion to dismiss the Non-Federal Defendants' affirmative defenses will be mooted and thus will be denied.

The facts are found as follows and are undisputed.  At issue in this litigation is the development of the Site, which is a 35-acre commercial development of a retail shopping area — the Gateway Center — located at the northeast corner of Transit Road and William Street in the Town of Lancaster, County of Erie, N.Y. NEC currently owns, leases or has options to acquire various parcels comprising the Site. Opco contracted with the Martzolfs to purchase one of the parcels within the Site and subsequently assigned the purchase agreement to NEC.  Bella Vista serves as NEC's agent and developer of the Gateway Center.  The Martzolfs contracted to sell a parcel of the Site to Opco and Opco, in turn, assigned the purchase right to NEC.

The Gateway Center was to include a Wal-Mart store in the southeast portion of the Site ("the Main Parcel") and four smaller retail establishments in the portion of the Site fronting Transit Road ("the Outparcels").  Wal-Mart has declined to finalize its acquisition of the property during the pendency of this action.  The Developer Defendants currently lease or sub-lease the Outparcels to four existing retail establishments.

The Developer Defendants are not directly involved in the construction of the buildings at the Gateway Center; rather, they are responsible for obtaining all necessary approvals for the ultimate development of the Gateway Center and for preparing the Site for construction.  Preparation work entails clearing trees, grading land and constructing access roads.  The Developer Defendants began developing the Site in March 1999.  They commenced preparation work on the Outparcels in August 2000 and completed it in November 2002, which consisted of two categories of activities — *viz.*, (1) preliminary clearing activity in 2000 and 2001 and (2) grading and road construction on the Outparcels in Fall 2002.  The occupants of the Outparcels completed the actual construction of their buildings in December 2003.  Thus, all construction-related activities were completed in December 2003.  The construction of the building on the Main Parcel will also be performed by the future tenant and not by the Developer Defendants.  The only remaining work that the Developer Defendants will undertake is filling the existing wetlands on the Site, performing the associated grading of the Site and

constructing a stormwater detention pond on a portion of the Site currently occupied by wetlands, for which the Developer Defendants have a wetland permit.

This is not the first proceeding in which plaintiffs have expressed their objections to the development of the Gateway Center. In 1999 the Town of Lancaster Town Board ("the Town Board") approved a rezoning necessary for an initial proposal by the Developer Defendants to develop a site plan for the Gateway Center. Beginning in March 2000 and continuing through March 2004, plaintiffs challenged in state court that and subsequent rezoning decisions of the Town Board as it pertained to the Site. *See CARS* v. *Giza*, 5 A.D.3d 1109, 1109 (4th Dept. 2004); *CARS* v. *Giza*, 280 A.D.2d. 234, 234 (4th Dept. 2001). After a series of state court actions, plaintiffs commenced the instant action.

The Developer Defendants move under FRCvP 12(b)(1) that the case be dismissed for want of jurisdiction because plaintiffs' notice-of-intent-to-sue letter ("Notice Letter") was inadequate and a proper notice is a jurisdictional prerequisite for a CWA citizen suit. The Developer Defendants also moved pursuant to FRCvP 12(b)(6) that the case be dismissed because plaintiffs lack standing and their claims are barred by the doctrine of laches. The Martzolfs have joined all the arguments made by the Developer Defendants.

Plaintiffs claim that the motions to dismiss are untimely because the Non-Federal Defendants have already answered. The Developer Defendants answered

on June 18, 2004 and the Martzolfs answered on August 16, 2004. FRCvP 12(b) states that the defense of failure to state a claim "shall be made before pleading if a further pleading is permitted." FRCvP 12(h)(2), however, states that "[a] defense of failure to state a claim upon which relief can be granted *** may be made in any pleading permitted *** or by motion for judgment on the pleadings, or at the trial on the merits." "Thus, the defense of failure to state a claim is not waivable." *Patel* v. *Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Furthermore, FRCvP 12(h)(3) states that, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Hence, a defense of subject matter jurisdiction also is not waivable. The Second Circuit Court of Appeals, as a result, has held that a "non-waivable defense[] under [FRCvP] 12(h)[] that is styled as arising under [FRCvP] 12(b) but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under [FRCvP] 12(c)." *Patel*, at 126. The standards for granting an FRCvP 12(c) motion for judgment on the pleadings is the same as the standards for granting a motion under FRCvP 12(b). *Ibid*.

In an FRCvP 12(b)(6) motion to dismiss, the standard of review is heavily weighted in favor of plaintiffs. The Court is required to read a complaint generously, accepting the material facts alleged therein as true and drawing all reasonable inferences from plaintiffs' allegations. *California Motor Transp. Co.* v.

*Trucking Unlimited*, 404 U.S. 508, 515 (1972); *Frasier* v. *Gen. Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991). Defendants are entitled to dismissal pursuant to FRCvP 12(b)(6) only if the Court finds that "it appears beyond doubt that *** plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). In order to survive dismissal, plaintiffs must assert cognizable claims and allege facts that, if true, would support such claims. *Boddie* v. *Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997).

In an FRCvP 12(b)(1) motion challenging the District Court's subject matter jurisdiction, the Court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and, if necessary, hold an evidentiary hearing. *Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). However, when matters outside the pleadings are presented on a FRCvP 12(b)(6) motion to dismiss for failure to state a claim, the Court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. *Morelli* v. *Cedel*, 141 F.3d 39, 46 (2d Cir. 1998). The Court will address only the Non-Federal Defendants' motions to dismiss pursuant to FRCvP 12(b)(1) for lack of subject matter jurisdiction because, as the Court will find that it lacks subject matter jurisdiction, it cannot address any other issues presented by the Non-Federal Defendants or by plaintiffs.

The CWA primarily regulates the discharge of pollutants into navigable waters by creating a regulatory regime requiring "principally that discharges be regulated by permit, not prohibited outright." *Catskill Mountains Chapter of Trout Unlimited, Inc.* v. *City of N.Y.*, 273 F.3d 481, 485-486 (2d Cir. 2001). The CWA prohibits the discharge of pollutants except when in compliance with certain provisions of the statute, one of which establishes a permitting program, the "National Pollutant Discharge Elimination System" ("NPDES"). 33 U.S.C. §1342. The CWA provides for the issuance of discharge permits ("NPDES permits") — issued either by the Environmental Protection Agency ("EPA") Administrator or by state agencies authorized by the EPA Administrator — that allow the holder to discharge pollutants at levels below thresholds incorporated in the permit. 33 U.S.C. §1342(a), (b); 40 C.F.R. §122.1 *et seq.* The CWA authorizes each state to implement its regulations through the state's own permit program as long as the program conforms to federal guidelines approved by the EPA Administrator. 33 U.S.C. §1342(b). In New York State, the NPDES program is administered by the New York State Department of Environmental Conservation ("NYSDEC") and is referred to as the "State Pollution Discharge Elimination System" ("SPDES"). *See* 33 U.S.C. §1342(b); N.Y. Envtl. Conserv. Law §§17-0105(13), 17-0701. Accordingly, the NYSDEC issues SPDES general permits for routine categories of regulated discharges, including stormwater discharge from construction activity. 6 NYCRR §750-1.21. Applicants may obtain coverage

under a SPDES general permit by simply filing a Notice of Intent to be covered by the permit.  6 NYCRR §750-1.21(d) .  In New York, NPDES permits pursuant to the CWA are deemed permits issued under the New York SPDES program.  6 NYCRR §750-1.4(c).  The holder of a New York SPDES general permit is subject to both state and federal enforcement actions for any failure to comply with the permit.  33 U.S.C. §§1319, 1342(b)(7).

The CWA provides for enforcement by state agencies and the EPA and allows private parties to file "citizen suits" to enforce the CWA.  33 U.S.C. §1365.  Aggrieved plaintiffs may bring a civil action for specific relief — *viz.*, imposition of particular compliance measures — or civil penalties and may recover attorney's fees.  33 U.S.C. §§1319, 1365.  At least sixty days prior to filing a citizen suit, prospective plaintiffs must provide notice of their claims ("notice letter") to the potential defendants, the EPA and the state in which the violations allegedly occurred.  33 U.S.C. §1365(b)(1)(A).  If a competent state or federal enforcement agency brings a civil enforcement action against the alleged violators prior to the filing of the citizen suit, or an administrative enforcement proceeding prior to the plaintiffs' notice letter, the citizen suit is preempted and must be dismissed.  33 U.S.C. §§1319(g)(6), 1365(b)(1)(B).

Per the authority granted by the CWA, the EPA Administrator has prescribed by regulation the procedural notice requirements of a citizen suit.  33 U.S.C. §1365(b).  If the suit is against an individual or corporation, "[a] copy of the

notice shall be mailed to the Administrator of the EPA, the Regional Administrator of the [EPA] ∗∗∗, and the chief administrative officer of the water pollution control agency for the State ∗∗∗." 40 C.F.R. §135.2(1). If the suit is against a federal government agency, an additional copy of the notice must be mailed to the United States Attorney General. 40 C.F.R. §135.2(3). Further, the notice shall include

> "sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. §135.3.

Plaintiffs bringing CWA citizen suits must comply with strict notice requirements in order to give government agencies a chance to take responsibility for enforcing environmental regulations and the alleged violators an opportunity to comply with the CWA. *Hudson Riverkeeper Fund* v. *Putnam Hosp.*, 891 F. Supp 152, 155 (S.D.N.Y. 1995). The Second Circuit has "refused to 'allow form to prevail over substance' in considering the content required of an [notice] letter, and ha[s] looked instead to what the particular notice given may reasonably be expected to accomplish." *Catskill Mountains*, at 487 (citations omitted). However, "reasonable specificity" is required such that the alleged violators can "identify the specific standard ∗∗∗ [claimed] to have been violated ∗∗∗ [and] the activity alleged to constitute a violation." *Id.* at 487-488 (citing 40 C.F.R. §135.3(a)).

Private citizens may commence a citizen suit against those alleged to be in violation of an effluent standard or limitation, including, *inter alia*, the discharge of any pollutant except as provided for in the CWA and a violation of a permit or condition of the CWA. 33 U.S.C. §1365(f)(1), (6); *City of N.Y.* v. *Anglebrook Ltd. P'ship*, 891 F. Supp. 900, 901 (S.D.N.Y. 1995). If the citizens prevail in an enforcement action, the court may enforce the effluent standard or limitation, order injunctive relief and/or impose civil penalties. 33 U.S.C. §1365(a).

The CWA addresses the threat of pollution created by stormwater runoff by requiring the authorization of an NPDES permit for stormwater discharges resulting from certain commercial or industrial activities. 33 U.S.C. §1342(p); *see, e.g., Anglebrook*, at 901 ("Among other things, pollutants from stormwater runoff can result in the deterioration of local water supply systems."). The NYSDEC issued the SPDES General Permit for Stormwater Construction Activities, permit GP-93-06, in 1993 and replaced it with the SPDES General Permit for Stormwater Discharges from Construction Activity, permit GP-02-01 ("the General Permit") in January 8, 2003. The General Permit may be used for construction activities involving any amount of disturbed acreage, provided that all other eligibility conditions of the General Permit are satisfactorily met. GP-02-01, at iv. Coverage under the General Permit is obtained by submitting a notice letter to the NYSDEC. Prior to the submission of a notice letter, applicants must have completed a Stormwater Pollution Prevention Plan ("SWPPP") that complies with all

requirements of the General Permit.  GP-02-01, at ii.  Coverage under the General Permit may be cancelled after construction is completed by submitting a Notice of Termination.  Noncompliance with the General Permit "constitutes a violation of the [CWA] *** and is grounds for an enforcement action ***."  GP-02-01, at 18.

A citizen suit cannot commence until sixty days after proper notice has been given pursuant to the CWA.  33 U.S.C. §1365.  As "[a] civil action is commenced by filing a complaint with the court", FRCvP 3, and such cannot occur under the CWA without proper notice, such court lacks jurisdiction to adjudicate CWA claims not predicated on proper notice.  *See Hallstrom* v. *Tillamook County*, 493 U.S. 20, 26-27 (1989); *Bettis* v. *Town of Ontario, N.Y.*, 800 F. Supp. 1113 (W.D.N.Y. 1992).

Plaintiffs served the Non-Federal Defendants with their Notice Letter in November 2002 and sent said letter via certified mail to the EPA Administrator, the Regional Administrator of the EPA and the Commissioner of the NYSDEC.  The Notice Letter states the location and the time periods of the alleged violations and alleges that the Non-Federal Defendants discharged stormwater without an SPDES permit prior to October 5, 2000 and thereafter failed to abide by the SPDES permit, GP-93-06.  In particular, the Notice Letter alleges that the Non-Federal Defendants submitted improper and incomplete Notice of Intent forms, failed to develop an SWPPP at each site purported to be covered by the SPDES permit, did not comply with the terms of the SPDES and had an inadequate and deficient

SWPPP. Plaintiffs' Notice Letter claims that the Non-Federal Defendants removed vegetation without an SPDES permit and, subsequent to obtaining an SPDES permit, failed to follow erosion and sedimentation controls or other indicia of an SWPPP conforming to the SPDES permit.[2] Plaintiffs allege that all violations are continuing.

The Non-Federal Defendants claim that plaintiffs' Notice Letter is inadequate both procedurally and substantively and thus the Court lacks subject matter jurisdiction over this action.  Procedurally, the Notice Letter is allegedly defective because (1) it does not identify all the plaintiffs in this action, (2) it does not provide the telephone number of each plaintiff giving notice, (3) a copy of the Notice Letter was not provided to the United States Attorney General and (4) plaintiffs did not mail a copy of their Complaint to the EPA Administrator, Regional Administrator or the United States Attorney General until a month after they commenced this action.  Substantively, the Non-Federal Defendants claim that plaintiffs' Notice Letter is deficient in that (1) the allegations are vague, (2)

---

[2] The Notice Letter states the following:
"Particular deficiencies [of the SWPPP] include: the nature of the construction activity is not described, the intended sequence of major activities which disturb soils from major portions of the site is not accurately described, estimates of the runoff coefficient of the site after construction activities are completed is absent, as is existing data describing the soil and the quality of any discharges from the site, and a site map indicating drainage patterns and approximate slopes anticipated after major grading activities, areas of soil disturbance, an outline of areas which will not be disturbed, the location of major structural and non-structural controls identified in the plan, the location of areas where stabilization practices are expected to occur, surface waters (including wetlands) and locations where stormwater is discharged to surface or groundwaters, is all absent." (Notice Letter at 4-5.)

it fails to identify any specific pollutants, (3) it does not specify the dates of the alleged violations and (4) the Complaint alleges violations not included in the Notice Letter.

  First, the Non-Federal Defendants claim that the case should be dismissed because not all the plaintiffs in this action were included in the Notice Letter. A vast majority of the plaintiffs were, however, listed on the Notice Letter and "[n]otice provided by a single plaintiff in a suit brought by multiple plaintiffs constitutes 'substantial compliance' with the notice requirements of the CWA ∗∗∗." *Long Island Soundkeeper Fund, Inc.* v. *N.Y. Athletic Club*, 1996 U.S. Dist. LEXIS 3383, at *7 (S.D.N.Y. 1996). Next, the Non-Federal Defendants claim that dismissal is appropriate because plaintiffs did not include their phone numbers in their Notice Letter. Plaintiffs claim that the Notice Letter included the phone number of plaintiffs' attorney and thus is sufficient. Plaintiffs' Notice Letter includes the full name and address of each plaintiff and the Non-Federal Defendants have been involved in litigation about the development of the Gateway Center with plaintiffs for years. They, therefore, have sufficient information to easily identify and contact plaintiffs. The Non-Federal Defendants cite several cases in support of their claim that failure to include phone numbers is sufficient for dismissal. In those cases, however, the lack of phone numbers was not the only deficiency in the notice letters. *See, e.g., Washington Trout* v. *McCain Foods, Inc.*, 45 F.3d 1351, 1352 (9th Cir. 1995) (notice letter did not include

the names, addresses or phone numbers of any of the named plaintiffs); *Sierra Club Ohio Chapter* v. *City of Columbus*, 282 F. Supp. 2d 756, 775 (S.D. Ohio 2003) (notice letter did not provide sufficient information to determine the full names, addresses or telephone numbers of those giving notice); *Bettis*, at 1117-1118 (notice letters were not sent via certified mail and none of the defendants were personally served, most of the alleged violators were not named in or did not receive the notice letters and the notice letters did not contain the full name, address and telephone number of the person giving notice). This Court in *Bettis* stated that "not all of the[] defects are equally serious." *Id.* at 1119. "[S]ome of the more technical departures from the [CWA's] requirements could perhaps be forgiven if the notice requirements as a whole had been substantially complied with." *Ibid* (finding that the problem with the notice letters was that they did not apprise the defendants of any violation of the CWA). Here, plaintiffs' failure to list their phone numbers, alone, is not sufficient to warrant dismissal; however, said failure and their substantive deficiencies detailed *infra* amount to sufficiently serious defects warranting dismissal.

As to the claim that plaintiffs did not provide a copy of their Notice Letter to the United States Attorney General, such does not apply to the Non-Federal Defendants' claims or potential liability. Moreover, plaintiffs are not claiming that a federal agency violated the CWA and thus service on the United States Attorney General is not needed for purposes of the CWA. *See* 40 C.F.R. §135.1(a). Finally,

plaintiffs' failure to send a copy of their Complaint to the EPA Administrator, Regional Administrator or the United States Attorney General until a month after commencing this action, although not prudent of their attorney, is, alone, also not sufficient to warrant dismissal.  This month-long delay is far less egregious than the nearly nineteen-month delay in commencing this action from the time of serving their Notice Letter.

Turning to the substance of plaintiffs' Notice Letter, the Non-Federal Defendants claim that the Notice Letter is vague — *viz.*, it "never identifies the 'pollutants' allegedly discharged, the waters of the United States allegedly receiving such discharges or any specific dates of the alleged violations." (Developer Defs.' Mem. Supp. Mot. Dismiss, at 10.)  The CWA allows the commencement of a citizen suit for a violation of "an effluent standard or limitation" as defined under the CWA. 33 U.S.C. §1365. Section 1365 enumerates seven types of effluent standards, one of which is a violation of "a permit or condition thereof issued under section 1342 of [the CWA]." 33 U.S.C. §1365(f)(6). Thus, a facially inadequate SWPPP is a violation of the CWA as it necessarily violates the terms of the SPDES permit issued under the CWA. *See Anglebrook*, at 904-905 ("[A] flawed plan filed in violation of permit requirements *** is an actionable violation of an effluent standard under §1365(f)(6)."). Plaintiffs' claim, therefore, that the Non-Federal Defendants violated the SPDES General Permit is an actionable claim under the CWA.  The Notice Letter, however, must allege a

specific permit violation and describe with some particularity the respects in which compliance with the permit is deficient. *Id.* at 906. Plaintiffs fail to meet this standard and said failure coupled with their procedural deficiencies warrant dismissal of this action. The court in *Anglebrook* found that the plaintiff's notice letter alleging violations of the SWPPP was sufficient because it "referred to the corresponding sections, paragraphs and subparagraphs of the General Permit" for each category of alleged permit violations. *Id.* at 907. Plaintiffs are not nearly as specific in their Notice Letter and, after years of litigation, such lack of specificity and vague allegations are unacceptable.

Notice letters "must identify with reasonable specificity" that which are alleged to have been unlawfully discharged in violation of the CWA. *Catskills Mountains*, at 488. Plaintiffs' Notice Letter — and subsequent Complaint — is vague, redundant and devoid of specific allegations. First, plaintiffs do not state the waters into which the alleged stormwater is being discharged. Next, plaintiffs allege general violations of GP-93-06 without specifying the particular provision or the way in which the Non-Federal Defendants have violated the SPDES permit. For example, plaintiffs claim that the SWPPP is not prepared in accordance with Appendix F of GP-93-06. (Notice Letter, at 4.) After having been in litigation for several years, plaintiffs should be more aware of the particular sections, if such exist, of Appendix F and cite those sections in their Notice Letter. Plaintiffs make similarly vague citations in their Complaint to GP-93-06, but GP-93-06 was

replaced by GP-02-01 over a year prior to this action and is no longer the relevant permit at issue. Plaintiffs' failure to identify how the Non-Federal Defendants are in violation of the SPDES permit does not place the Non-Federal Defendants on notice of their alleged violations. Simply stating that the Non-Federal Defendants "have failed to conform" to the SPDES permit without describing the manner in which they have failed does not place the Non-Federal Defendants on notice. (Notice Letter, at 5.)

In their response, plaintiffs quote a significant portion of *California Sportfishing* v. *Diablo Grande*, 209 F. Supp. 2d 1059 (E.D. Cal. 2002), which, in fact, supports dismissal of plaintiffs' claims. The notice letter in *California Sportfishing* identifies, *inter alia,* the amount of rainfall necessary to create the stormwater discharge, the specific location of the activities causing the discharge, the specific provisions of the permit that are alleged to be violated and the specific acts and omissions that violated the specific sections of the permit. *Id.* at 1069-1070. Plaintiffs' Notice Letter does not make any allegations close to that level of specificity.[3]

The content requirements for the notice letter are intended to facilitate the objectives of the CWA — to wit, to allow government agencies to take responsibility for enforcing environmental regulations and thus obviating the need for citizen suits and to give the alleged violator an opportunity to come into

---

[3]Plaintiffs' Complaint is just as vague and avoids asserting substantive claims by being repetitive, irrelevant and extremely long.

compliance with the CWA and thus likewise render unnecessary a citizen suit. *Hudson Riverkeeper*, at 155 (citing *Gwaltney of Smithfield, Ltd.* v. *Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)). Plaintiffs' failure to indicate any specific violations, the source of the violations and the waters into which the stormwater is being discharged may have prevented the Non-Federal Defendants from accurately identifying their alleged violations and may have hindered a timely, out-of-court resolution of this conflict. Plaintiffs' claims as against the Non-Federal Defendants, therefore, will be dismissed. As such, the Court lacks jurisdiction to address the other issues presented and plaintiffs' cross-motion will be dismissed.

According, it is hereby **ORDERED** that the motion of NEC, Bella Vista and Opco to dismiss is granted, that the Martzolfs' cross-motion to dismiss is granted, that plaintiffs' cross-motion for judgment on the pleadings as to certain affirmative defenses is dismissed, that NEC, Bella Vista, Opco and John and Carolyn Martzolf are dismissed from this action and the caption of this action shall now read:

> "CARS (CITIZENS AGAINST RETAIL SPRAWL),
>   by George Ciancio, its President,
> GEORGE J. CIANCIO,
> GEORGE C. FRANKE,
> LAWRENCE F. HELMINIAK,
> DAVID & MARY ALYS KRATZKE,
> SHARON CRAMER & LESLIE MORRIS,
> BRIAN & HELEN BORZYNSKI,
> LUCILLE & DENIS MARSH,
> CAROLYN L. BAKER,
> MARY CICH,

>ROBERT J. SMACZNIAK,
>JEROME J. KUCHARSKI,
>JERRY & IDA SAWYER,
>NANCY PIENIAZEK,
>TERRENCE & KATHLEEN RICHARD,
>JAMES P. HEISLER,
>RONALD J. SZYPAJLO,
>STEPHEN & LUCILLE STAWICKI,
>RUTH & NORMAN JOHNSON,
>CARLEEN BLAKE RYAN,
>GARY & MARIETA RONALD,
>JOY THRUN,
>WALTER & VIRGINIA WOJDYLA,
>FRANK & ANTOINETTE VOLPE,
>FRANK & MARLENE TODARO and
>ENRICO & DOMENICA BENEDETTI,
>                    Plaintiffs,
>        -vs-
>THE UNITED STATES ARMY CORPS OF ENGINEERS
>and UNITED STATES OF AMERICA,
>                    Defendants."

DATED:   Buffalo, N.Y.
         December 23, 2005

                                    /s/ John T. Elfvin
                                    JOHN T. ELFVIN
                                    S.U.S.D.J.